■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ROBERT J. WILKINS, Appellant.—Mahoney, P. J. Appeal from a judgment of the Supreme Court (Ingraham, J.), rendered February 10, 1986 in Chenango County, upon a verdict con-

victing defendant of the crime of manslaughter in the first degree.

Defendant's prior conviction of manslaughter in the first degree was affirmed by our divided court (101 AD2d 957) but reversed by the Court of Appeals (65 NY2d 172), which ordered certain statements suppressed. On retrial, the record reveals that at about 8:00 P.M. on May 16, 1982, Gloria Diamond, then 16 years of age, returned to the apartment she had previously shared with defendant. During the evening they argued and Diamond attacked defendant with two knives, cutting his left wrist and stabbing him in the abdomen. Following this attack, Diamond was strangled to death. Later that night, defendant made several attempts to kill himself, the last one by jumping in front of a car on the highway. While in an ambulance on the way to a hospital defendant stated to a State Trooper, "I just killed my girlfriend." Defendant also made certain incriminating comments while hospitalized. Defendant was convicted of manslaughter in the first degree and sentenced to 8⅓ to 25 years' imprisonment. This appeal by defendant ensued.

Initially, we reject defendant's contention that it constituted reversible error for the Trial Judge who presided at the first trial not to recuse himself at the second trial. "Absent a legal disqualification under Judiciary Law § 14, a Trial Judge is the sole arbiter of recusal" (People v Moreno, 70 NY2d 403, 405). Only when alleged bias and prejudice arise from an extrajudicial source and result in an opinion on the merits based on the outside source is disqualification warranted (supra, at 407). No such bias or prejudice has been demonstrated here.

We also turn away defendant's argument that it was reversible error for Supreme Court to comment on the relatively brief period it took to select a jury. The court stated to the sworn jury, "In the case of the infamous California Hillside Strangler, they took five months to select a jury." While the remark was uncalled for, it was not so prejudicial as to require a new trial (see, People v Moulton, 55 AD2d 962, affd 43 NY2d 944). In any event, defendant's argument on this issue was not properly preserved for our review as defense counsel made no objection to Supreme Court's comment (see, People v Charleston, 56 NY2d 886, 887). We find no other conduct by the court sufficiently egregious to have denied defendant his right to a fair trial.

Next, we find unpersuasive defendant's contention that reversible error occurred when the jury was allowed to examine the autopsy report which had not been received in evi-

dence. The record shows that the County Medical Examiner performed an autopsy on the deceased and was extensively examined by the prosecutor and defense counsel during trial. The record also shows that after the autopsy report was marked as an exhibit and became the subject of exhaustive examination by counsel, it was never formally received into evidence. While the record is unclear, the People contend that no exhibits were taken into the jury room. We are of the view that in light of the lengthy examination of the Medical Examiner by counsel for both sides, all pertinent information was brought to the jury's attention and, therefore, the failure to admit the autopsy report into evidence was harmless error *(cf., People v Smithwick,* 88 AD2d 852).

Also, we find that the record does not support defendant's contention that incriminating statements were elicited from him after he asserted his right to counsel.\* The record clearly reveals that defendant, while lying on a stretcher following an automobile accident, stated to a State Trooper, "I just killed my girlfriend." Defendant then answered a couple of reasonable clarifying questions *(see, People v Mullins,* 103 AD2d 994, 995, *lv denied* 63 NY2d 709) before stating that he would say no more, at which time the Trooper advised him of his *Miranda* rights. When the Trooper went to the hospital with a senior investigator from the State Police defendant was again advised of his *Miranda* rights. Despite this admonition, defendant stated, "You have your man, you have your corpus delicti, now you figure it out. You figure the rest out. I don't want to tell you any more." It is clear, therefore, that defendant's initial admission that he killed his girlfriend was immediate, contemporaneous and voluntary, and made before the Trooper had an opportunity to warn him; defendant's subsequent incriminating remarks were made after he had been readvised of his *Miranda* rights but before any assertion of his right to counsel, so that waiver of any invoked right to silence was effective *(see, People v Buxton,* 44 NY2d 33, 37). Accordingly, defendant's claim is without merit.

Lastly, we do not find the prison sentence of 8⅓ to 25 years to be excessive. Supreme Court relied on two psychiatric reports that advised treatment of defendant for a mental condition described as "explosive disorder" and other factors justifying the sentence.

---

\* The statements now at issue do not include those ordered suppressed by the Court of Appeals which were made to other State Police Investigators at a later time *(see, People v Wilkins,* 65 NY2d 172, 180).

Judgment affirmed. Mahoney, P. J., Kane, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.

